IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMERICAN RELIABLE INS. CO., <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTINA VLIELAND, JEFF VLIELAND, RANDY SELF, and TINA ROBERTS <br><br> Defendants. | CV 17–100–M–DLC <br><br><br> ORDER |

Before the Court is Plaintiff American Reliable Insurance Company's ("American Reliable") motion for summary judgment. American Reliable seeks declaratory relief that the allegations made against Defendants Christina and Jeff Vlieland ("Vlielands") in Montana Eleventh Judicial District Court, Flathead County, Montana ("Underlying Complaint" or "Underlying Litigation") fail to trigger coverage under a Comprehensive Manufactured Home Policy ("Policy"), and therefore, American Reliable is not required to indemnify the Vlielands. American Reliable argues there is no duty to indemnify because: (1) the allegations in the Underlying Complaint are all intentional acts which do not constitute an "occurrence" under the Policy; and (2) that Policy exclusions preclude coverage. American Reliable also moves the Court to dismiss the Vlielands' affirmative

-1-

defenses. For the reasons explained below, the Court denies the motion for summary judgment and dismisses one of the Vlielands' affirmative defenses.

## BACKGROUND AND PROCEDURAL HISTORY

The Vlielands are neighbors of Randy Self and Tina Roberts ("Underlying Plaintiffs") on 4th Street West in Hungry Horse, Montana. On November 1, 2016, Underlying Plaintiffs filed the Underlying Complaint against the Vlielands, who are American Reliable's insureds, in Montana Eleventh Judicial District Court, Flathead County, Montana.

Underlying Plaintiffs allege that since the Vlielands moved into their Hungry Horse home in June 2011, the Vlielands have intentionally harassed, disrupted, and interfered with their enjoyment of life. The Underlying Complaint alleges that: (1) the Vlielands played loud music and directed noise at Underlying Plaintiffs' residence; (2) the Vlielands poisoned Underlying Plaintiffs' dog; (3) Jeff Vlieland pointed a pistol at Randy Self; (4) Jeff Vlieland tried to run Tina Roberts off the road; (5) the Vlielands threw rocks at Underlying Plaintiffs' residence; and (6) the Vlielands increased the height of their fence to block Underlying Plaintiffs' view. These factual allegations form the basis for the claims of nuisance, intentional infliction of emotional distress, and assault in the Underlying Complaint.

The Vlielands tendered the Underlying Complaint to American Reliable and requested a defense and indemnification. During the relevant periods of the Vlielands' alleged conduct, the Vlielands had a Comprehensive Manufactured Home Policy issued by American Reliable (the "Policy"). The Policy is a standard "occurrence" based homeowner's policy, providing coverage for bodily injury and property damage. American Reliable provided a defense under a reservation of rights, and filed this declaratory action.

American Reliable seeks summary judgment arguing that the policy precludes coverage because the conduct alleged does not qualify as an "occurrence" under the Policy. American Reliable additionally argues that even if the conduct qualifies as an "occurrence" under the Policy, five Policy exclusions further preclude coverage:

1. "Intentional Acts Exclusion";

2. "Illegal Activities Exclusion";

3. "Expected or Intended Acts Exclusion";

4. "Assault and Emotional Abuse Exclusion";

5. "Punitive Damages Exclusion."

The Vlielands counter that the issue of American Reliable's duty to indemnify is not ripe for this Court's determination, but should the Court decide the issue, the Vlielands argue that the Underlying Complaint alleges an

"occurrence" and that the Policy's exclusions are inapplicable. Further, in the Vlielands' Answer, the Vlielands asserted affirmative defenses that American Reliable breached its obligation to defend and indemnify the Vlielands by seeking a declaration from the Court regarding their obligation to indemnify under the Policy.

Trial in the Underlying Complaint is currently set for the term beginning June 18, 2018, in Montana Eleventh Judicial District Court, Flathead County, Montana.

**LEGAL STANDARD**

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all

justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

The interpretation of an insurance contract is a question of law for the Court. *Babcock v. Farmers Ins. Exch.*, 999 P.2d 347, 348 (Mont. 2000). The Court will construe terms according to their usual, commonsense meaning. *Natl. Farmers Union Prop. & Cas. Co. v. George*, 963 P.2d 1259, 1261 (Mont. 1998). The interpretation should honor the objectively reasonable expectations of the insured. *Hanson v. Emp'rs Mut. Cas. Co.*, 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004). Any ambiguities regarding coverage are construed against the insurer. *Id.* at 1073. "An ambiguity exists when a contract taken as a whole is reasonably subject to two different interpretations." *Id.* (citation omitted); *see also Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). However, a policy provision is not ambiguous just because the parties disagree as to its interpretation, and "courts will not distort contractual language to create an ambiguity where none exists." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009). "[A]n insurer must defend all counts so long as one count potentially triggers coverage, even if the remaining counts would not be covered." *J&C Moodie Prop. LLC v.*

*Deck*, 384 P.3d 466, 472 (Mont. 2016) (citing *State Farm Fire & Cas. Co. v. Schwan*, 308 P.3d 48, 51 (Mont. 2013)).

## I. Ripeness and Duty to Indemnify

An insurer's duty to defend arises "when a complaint against an insured alleges facts, which if proven, would result in coverage" however "an insurer's duty to indemnify arises only if coverage under the policy is *actually established*." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 410–11 (Mont. 2013) (internal quotations and citations omitted) (emphasis added). While the allegations in a complaint may trigger an insurer's duty to defend its insured, "an insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove, but instead on the facts, *proven, stipulated or otherwise established* that actually create the insured's liability." *Id.* at 411 (internal quotations and citations omitted) (emphasis added). "When facts necessary to determine the existence of coverage are contested in an underlying action, the insurer cannot be said to have yet breached the duty to indemnify." *Id.*

The duty to indemnify "does not arise unless the policy actually covers the alleged harm." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005) (citation omitted). "[W]here there remain unresolved relevant issues in the underlying case, inseparable from the issues presented in the declaratory judgment action, the duty to indemnify is not ripe for resolution." *Id.* at 363. Ruling on a

-6-

duty to indemnify before allowing the facts to be determined in an underlying action fails to be "a final adjudication on the indemnification issue," and instead results in "speculative advice, subject to possible amendment or nullification upon final resolution of the underlying case." *Id.* at 364–65 (quoting *Northfield Ins. Co. v. Mont. Ass'n of Ctys.*, 10 P.3d 813, 819 (Mont. 2000)). Therefore, courts must caution against determining questions of indemnity until liability is established in the underlying proceeding. *Id.*; *see also Natl. Sur. Corp. v. Mack*, 2016 WL 590453, at *2 (D. Mont. Feb. 11, 2016); *Penn Star Ins. Co. v. Real Estate Consulting Specialists, Inc.*, 1 F. Supp. 3d 1168, 1175 (D. Mont. 2014).

American Reliable's motion is not ripe and justiciable regarding its duty to indemnify the Vlielands under the Policy. The allegations in the Underlying Complaint are currently unresolved in a pending state court matter where no facts have been established that actually create liability for the Vlielands. Further, though the alleged intentional acts trigger a duty to defend the insureds, the duty to indemnify the Vlielands cannot be determined until the allegations in the Underlying Complaint are proven or established.

The underlying state action must conclude in order for the Court to have the necessary facts to make a determination of American Reliable's duty to indemnify the Vlielands. Thus, American Reliable's motion is not ripe for this Court's

consideration. However, the Court will address the parties' remaining arguments regarding coverage under the Policy

## II. An "Occurrence" under the Policy

American Reliable initially argues that there is no coverage under the Policy for the Vlielands' conduct because the Underlying Complaint does not allege an "occurrence," which is necessary to trigger a duty to indemnify. The Vlielands' counter that because the Underlying Complaint alleges nuisance, the claims are covered under the Policy. A nuisance action in Montana may be based upon conduct that is either "intentional, negligent, reckless, or ultrahazardous." *Martin v. Artis*, 290 P.3d 687, 689 (Mont. 2012).

According to the Policy, an "Occurrence" is defined as:

> . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>
>   a. "bodily injury"; or
>
>   b. "property damage."

(Doc. 15-5 at 6.) In *Employers Mutual Casualty Company v. Fisher Building, Inc.*, the Montana Supreme Court held that an "accident" may include intentional acts so long as the consequences of those acts are not objectively intended or expected from the standpoint of the insured. 371 P.3d 375, 378 (Mont. 2016) (hereafter

"*Fisher*"). The Montana Supreme Court additionally instructs that an intentional act may constitute an "occurrence" under a policy because the subsequent consequences may not have been intended or expected by the actor. *Id*. Therefore, the Montana Supreme Court established that the following two-part test should be utilized when determining whether the conduct in question constitutes an "accident": "(1) whether the act itself was intentional; and (2) if so, whether the consequences or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Id*. (citing *Northwestern Nat. Cas. Co. v. Phalen*, 597 P.2d 720 (Mont. 1979)).

The Ninth Circuit recently relied upon *Fisher* in its decision in *Walden v. Maryland Casualty Company*. 692 F. App'x 476 (9th Cir. 2017). In *Walden*, the Ninth Circuit found that the "intentional acts" exclusion under an insurance policy did not preclude coverage because coverage under *Fisher* may still exist if the intentional acts caused unintended or unexpected consequences to the victim. *Id.* The Ninth Circuit held that under Montana law, an "occurrence" necessary to trigger coverage does not exist if: "1) the act itself was intentional, *and* 2) . . . the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Id.* at 477 (citing *Fisher*, 371 P.3d at 378) (emphasis added); *see also Mid-Century Ins. Co. v. Windfall Inc.*, 2016 WL 2992114, at *3 (D. Mont. May 23, 2016) (citing *Fisher*, 371 P.3d at 378).

Whether the allegations in the Underlying Complaint implicate an "occurrence" under the Policy presents a genuine issue of material fact. Under *Fisher* and *Walden*, the Policy covers "accidents," which may include intentional acts if such acts resulted in unintended or unexpected consequences. Here, there are factual disputes to be resolved at trial regarding whether the Vlielands' actions constituted negligent or intentional conduct. Though the acts are alleged as claims of intentional infliction of emotional distress and assault, they are also alleged in a claim of nuisance, which may be premised on negligent conduct. (Doc. 1-1 at 2–3.)

Additionally, it's not plain from the face of the pleadings that the consequences of the Vlielands' alleged acts were objectively intended or expected. Therefore, an issue of fact remains regarding whether the acts in the Underlying Complaint trigger an "occurrence" under the Policy, which precludes summary judgment at this time.

### III. Additional Exclusions under the Policy

The Policy contains five exclusions that American Reliable contends bars coverage for the acts in the Underlying Litigation. However, the "Intentional Acts Exclusion," "Illegal Activities Exclusion," "Expected or Intended Acts Exclusion," and "Assault and Emotional Abuse Exclusion" do not apply as issues of fact remain unresolved in the Underlying Litigation, which will determine their

potential application to the present declaratory action. The fifth "Punitive Damages Exclusion" does apply.

### a. "Intentional Acts," "Expected or Intended," "Illegal Activities," and "Assault and Emotional Abuse" Exclusions

American Reliable first argues that all of the allegations against the Vlielands in the Underlying Complaint involve intentional acts that are excluded from coverage under the "Intentional Acts Exclusion" or involve damages which were objectively expected or intended by Vlielands and excluded from coverage by the "Expected or Intended Exclusion." (Doc. 17 at 12–16.) Next, American Reliable argues that the allegations forming the basis of the Underlying Complaint constitute some form of illegal activity and are excluded by the "Illegal Activities Exclusion." (Doc. 17 at 16–18.) Finally, American Reliable argues that the allegations concerning assault and emotional distress in the Underlying Complaint are not covered by the Policy under the "Assault and Emotional Abuse Exclusion." (Doc. 17 at 18–19.)

According to the Policy, Exclusion 1(a)–the Intentional Acts Exclusion provides:

> 1. Coverage E - Personal Liability and COVERAGE F - Medical Payments to Others do not apply to bodily injury or property damage:
> \* \* \*
> a. Which is intended by, or which may reasonably be expected to result from any intentional act, or omission, of any person insured by this policy. . . . This exclusion applies even if: . . . (2) Such bodily

-11-

injury or property damage is of a different kind or degree than intended or reasonably expected by any insured. . . .

(Doc. 15-5 at 13.) Additionally, according to the Policy, Exclusion 1(b)–the Expected or Intended Exclusion provides:

> 1. Coverage E - Personal Liability and COVERAGE F - Medical Payments to Others do not apply to bodily injury or property damage:
> \* \* \*
> b. Which is expected or intended by you.

(Doc. 15-5 at 13.) According to the Policy, Exclusion (1)(e)–the Illegal Activities Exclusion provides:

> 1. Coverage E - Personal Liability and COVERAGE F - Medical Payments To Others do not apply to bodily injury or property damage:
> \* \* \*
> e. That arises out of the illegal activities or any criminal act of any person insured by this policy, including any person defined as "you";

(Doc. 15-5 at 13.) According to the Policy, Exclusion (2)(e)–the Assault and Emotional Abuse Exclusions provides:

> 2. Coverage E - Personal Liability and COVERAGE F - Medical Payments to Others do not apply to:
> \* \* \*
> b. Bodily injury or property damage, or any expense, obligation or duty that arises out of or is connected with: (1) Actual, threatened or alleged assault.
> \* \* \*
> c. Bodily injury or property damage, or any expense, obligation or duty that arises out of or is connected with: (2) Emotional or mental abuse of any kind committed by any person.

(Doc. 15-5 at 14–15.)

If it is clearly established at trial in the Underlying Litigation that the Vlielands committed intentional acts with expected or intended consequences, then coverage would be precluded under the plain and unequivocal language of the Policy. (Doc. 1-1 at ¶¶ 3–8.) Further, Underlying Plaintiffs allege acts that could constitute some form of illegal activity under the Policy, and therefore, would be barred from coverage. (*Id.*) Finally, Underlying Plaintiffs allege claims in the Underlying Complaint of intentional infliction of emotional distress and assault that would be barred as assault and emotional abuse under the Policy. (*Id.* at ¶¶ 11–15.)

In the Underlying Complaint there are claims of both intentional acts and nuisance. (Doc. 1-1 at 2–3.) Under Montana law, proving a claim of nuisance does not require proof of an intentional act and includes negligent conduct. As indicated above, pursuant to *Fisher* and *Walden*, the "Intentional Acts Exclusion" and "'Expected or Intended Exclusion" do not preclude coverage if there is a possibility that the conduct had unintended and unexpected consequences to the victim. The parties dispute whether the Vlielands' actions were negligent or intentional, which present factual issues to be resolved at trial in the Underlying Litigation. Because questions of fact exist regarding whether the Vlielands' conduct was intentional or negligent, and if found intentional, whether the Vlielands' could have expected or intended the consequences of that conduct,

summary judgment is not proper on the "Intentional Acts Exclusion" and "Expected or Intended Exclusion."

Consequently, the Court finds that there remain genuine issues of material fact regarding whether the Vlielands' alleged conduct constituted illegal activities, or assault and emotional abuse, sufficient to trigger the "Illegal Activities Exclusion" and "Assault or Emotional Abuse Exclusion" under *Fisher* and *Walden*. If it is determined at the time of trial in the Underlying Litigation that the Vlielands engaged in solely intentional conduct, a determination would next have to be made whether the consequences of that conduct were unintended or unforeseen. Therefore, summary judgment is not proper on the "Illegal Activities Exclusion" and "Assault or Emotional Abuse Exclusion."

### b. Punitive Damages Exclusion

American Reliable next argues that the Policy excludes coverage for punitive or exemplary damages. According to the Policy, Exclusion (3)(g)–the Punitive Damages Exclusion provides:

> 3. Coverage E - Personal Liability does not apply to:
> * * *
> g. Punitive or exemplary damages.

(Doc. 15-5 at 15.) Underlying Plaintiffs allege they are entitled to punitive damages in the Underlying Complaint. (Doc. 1-2 at ¶ 17.) Montana law recognizes that insurance coverage does not extend to punitive or exemplary

damages unless expressly included by policy. Mont. Code Ann. § 33-15-317 (2017). Further, the Vlielands concede that the Policy excludes coverage for punitive damages. (Doc. 19 at 14.)

The Court concludes the Policy excludes indemnification for punitive damages. However, because the Court has determined that the issue of whether there is an "occurrence" cannot be resolved at this time, American Reliable's duty to defend the Vlielands is ongoing.

## IV. Affirmative Defenses

The Montana Supreme Court has routinely held that the proper course of action for an insurer to contest coverage to its insured is "to defend under a reservation of rights and file a declaratory action to resolve the coverage question." *Hucking v. United Servs. Auto. Assoc.*, 396 P.3d 121, 128 (Mont. 2017) (citations omitted). When facts necessary to determine the existence of coverage are contested in an underlying action, the insurer cannot be said to have breached the duty to indemnify as that determination is not yet ripe for resolution. *See Freyer*, 312 P.3d at 411; *Skinner*, 127 P.3d at 363–64; *Northfield*, 10 P.3d at 817.

The Vlielands assert in Affirmative Defense 1 that American Reliable breached its obligation to defend and indemnify the Vlielands by seeking a declaration from the Court regarding their obligation to indemnify under the Policy. (Doc. 7 at 7–8.) American Reliable is defending the Vlielands under a

-15-

reservation of rights while pursuing this declaratory action regarding its duty to indemnify. (Doc. 12 at ¶¶ 6–9.)

Here, it is undisputed that American Reliable is following the prudent course of action recommended by the Montana Supreme Court by defending the Vlielands under a reservation of rights while pursuing this declaratory action, and therefore has not breached its duty to defend. Thus, the Court will strike Affirmative Defense 1.

## CONCLUSION

Based on the analysis above, the Court finds that there exists issues of fact in the Underlying Complaint most appropriately developed at trial in the Underlying Litigation for determining a duty to indemnify.

Accordingly, IT IS ORDERED that Plaintiff American Reliable's Motion for Summary Judgment (Doc. 16) is DENIED.

IT IS FURTHER ORDERED that Defendant Vlielands' Affirmative Defense 1 contained in its Answer (Doc. 7) is STRICKEN.

DATED this 30th day of March, 2018.

_____
Dana L. Christensen, Chief District Judge
United States District Court